**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Joshua Thomas WRIGHT, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2014.

Filed Aug. 29, 2014.

---

Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Norma Chase, Pittsburgh, for appellee.

BEFORE: BOWES, WECHT, and STABILE, JJ.

OPINION BY STABILE, J.:

Appellant, the Commonwealth of Pennsylvania, appeals from the trial court's April 16, 2013 order suppressing evidence. The Commonwealth asks us to decide whether the trial court erred in suppressing a cell phone that police seized pursuant to the plain view doctrine. We affirm.

The trial court recited the pertinent facts and procedural history in its Pa. R.A.P. 1925(a) opinion:

> On July 2, 2012, [Appellee, Joshua Thomas Wright ("Appellee")], was charged with two counts of criminal homicide, one count of burglary, and one count of possession of a prohibited firearm stemming from the July 1, 2012 shooting deaths of Da'Shawna Gibson, [Appellee's] ex-girlfriend and mother of his child, and Michael Black, Gibson's supposed new paramour. [Appellee] filed a motion to suppress on January 25, 2013, and a suppression hearing was held on April 5, 2013. On April 16, 2013, this [c]ourt granted [Appellee's] Motion to Suppress. On May 1, 2013, the Commonwealth filed a Motion to Reconsider, which was denied via Order of Court dated May 13, 2013. On May 15, 2013, the Commonwealth filed the instant appeal.
>
>     \*    \*    \*

> The following are the facts as found by this [c]ourt during the Suppression Hearing: The shooting deaths of Gibson and Black were brought to the attention of the Wilkinsburg Police Department by Brandy Clark ("Clark"), who was present in the home at the time of the incident. Clark relayed a few different versions of the events of the night in question, however ultimately she convinced the officers to enter and search the premises, where they discovered the bodies of Gibson and Black in an upstairs bedroom. Based upon Clark's observations and identification of [Appellee] as the shooter, an arrest warrant for [Appellee] was issued. The police executed the arrest warrant at approximately 2:20 a.m. at [Appellee's] mother's residence.

> Upon arrest, [Appellee] was found in bed wearing only a pair of underwear. [Appellee] was then handcuffed, and, given his state of undress, the arresting police officers assisted him in getting clothed. They chose and placed upon him a pair of khaki shorts. The two officers testified that they had found [Appellee's] cellular telephone in the pocket of the shorts after they were placed upon him, and as such, the cellular telephone was seized incident to arrest. The [c]ourt did not find as credible testimony that the officers gave a double homicide suspect an article of clothing to wear with something as weighty as a cell phone in the pockets. This action would be contrary to the safety of the officers, as the clothing could have contained a gun or other small weapon, and contrary to police policy. [Appellee's] mother, who was present during the arrest testified that the cellular telephone was located 'in the front of the television on the left side' next to [Appellee's] bed. This [c]ourt

found as credible [Appellee's] mother's testimony. Based upon the testimony presented at the suppression hearing, this [c]ourt concluded that the cellular telephone was situated on the nightstand next to the bed, and not seized incident to arrest or within [Appellee's] immediate control, and as such, the seizure was impermissible.

Trial Court Opinion, 8/26/13, at 1–3 (record citations omitted). Appellee stands accused of two counts of criminal homicide (18 Pa. C.S.A. § 2501(a)), one count of burglary (18 Pa.C.S.A. § 3502), and one count of persons not to possess a firearm (18 Pa.C.S.A. § 6501(a)(1)).

As set forth above, the Commonwealth filed a timely appeal from the trial court's suppression order.[1] The Commonwealth raises a single issue for review: "Whether the lower court erred in granting the Appellee's motion to suppress his cellphone and its contents based on an allegedly unlawful seizure of the phone?" Commonwealth's Brief at 4.

We review the trial court's order according to the following standard:

> When the Commonwealth appeals from a suppression order, we … consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super.2013).

The Commonwealth accepts, as it must, the trial court's finding that Appellee's mother offered credible testimony as to the location of the cell phone. Therefore, the sole issue before us is whether the plain view doctrine justified the war-

1. The Commonwealth relies on Rule 311(d) of the Pennsylvania Rules of Appellate Procedure, which provides as follows:

   **(d) Commonwealth appeals in criminal cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

   Pa.R.A.P. 311(d). The propriety of the Commonwealth's Rule 311(d) certification implicates our jurisdiction to entertain this appeal. *Commonwealth v. White*, 589 Pa. 642, 910 A.2d 648, 653 (2006).

   While the Commonwealth's good faith certification under Rule 311(d) is entitled to some deference, this Court need not accept its good faith certification in every case. In *White*, for example, an evenly divided Supreme Court could not agree whether an order denying a recusal motion substantially handicapped the Commonwealth's prosecution. The divided opinion left standing this Court's opinion that the denial of the recusal motion was not appealable pursuant to Rule 311(d). In *Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871, 876 (2003), the Supreme Court ruled that the Commonwealth could not rely on Rule 311(d) to appeal from a pretrial motion *in limine* admitting defense evidence. Nonetheless, where the defendant prevails in a pretrial motion to suppress Commonwealth evidence, our Supreme Court has held that "[w]hen a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case." *Id.* at 875 (*citing Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985)). In the instant matter, therefore, we have jurisdiction to entertain this appeal pursuant to the Commonwealth's Rule 311(d) certification.

rantless seizure of Appellee's cell phone. We conclude that it did not.[2]

In general, the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution do not permit police to search for or seize property absent a lawfully obtained search warrant. *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 (Pa.Super.2012), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012). The plain view doctrine permits a warrantless seizure if each of the following conditions applies:

> 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

*Id.*

The parties do not now dispute that the police were lawfully present in Appellee's mother's home and that the cell phone was in plain view. The trial court found that the Commonwealth failed to establish that the incriminating nature of Appellee's cell phone was immediately apparent. Trial Court Opinion, 8/26/13, at 4. A police officer has probable cause to believe that an object is incriminating where "the facts available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or *useful as*

evidence of a crime[.]" *Commonwealth v. McEnany*, 446 Pa.Super. 609, 667 A.2d 1143, 1148 (1995) (emphasis in original). The probable cause standard does not require the officer's belief to be "correct or more likely true than false." *Id.*

In *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1050 (1995), a police officer seized a screwdriver from the defendant's vehicle. The officer testified that the screwdriver was capable of making the pry marks the officer observed at the scene of the crime. *Id.* In addition, an eyewitness saw the defendant's vehicle at the scene of the crime. *Id.* The Supreme Court concluded that the circumstances were sufficient to lead a person of reasonable caution to believe that the screwdriver was incriminating evidence. *Id.* Likewise, in *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 652 (2010), the Supreme Court held police properly seized a cell phone because police knew the victim had a cell phone with him on the night of his murder and because police observed a blood-stained cell phone in plain view during their search of the defendant's dorm.

The Commonwealth relies on *McEnany*, in which police found a cell phone during their execution of a search warrant on the accused's van. *McEnany*, 667 A.2d at 1147. The accused argued that the warrant was not sufficiently specific to justify the seizure of his cell phone. *Id.* at 1148. The Commonwealth argued, and this Court agreed, that police lawfully seized the cell phone pursuant to the plain view

---

2. In his brief, Wright asserts the Commonwealth waived this issue. We disagree. At the suppression hearing, the Commonwealth's witnesses testified that the cell phone was on Wright's person and therefore seized incident to arrest. In response to the trial court's contrary finding of fact, the Commonwealth filed a motion for reconsideration asserting the police properly seized the cell phone pursuant to the plain view doctrine. The trial court addressed this issue on the merits in its Pa.R.A.P. 1925(a) opinion. Raising the issue in a motion for reconsideration was sufficient to preserve the issue for appellate review. *Commonwealth v. McCandless*, 880 A.2d 1262, 1268–69 (Pa.Super.2005), *appeal dismissed*, 593 Pa. 657, 933 A.2d 650 (2007); *Commonwealth v. Santiago*, 822 A.2d 716, 723 (Pa.Super.2003), *appeal denied*, 577 Pa. 679, 843 A.2d 1237 (2004).

doctrine. *Id.* Police were aware that the accused used the van to drive to the victim's residence on the day of the murder. *Id.* More importantly, police were aware that the accused made a phone call to the victim's residence on the day of the murder. *Id.* Based on these facts, the *McEnany* Court concluded that police were justified in seizing a cell phone in plain view during their execution of the search warrant. *Id.*

To summarize, in *Ellis, Jones,* and *McEnany,* police had specific evidence tying the seized object to the crime under investigation. We do not believe the analysis in any of these cases warrants reversal in the instant case. Here, unlike *McEnany,* police had no evidence of a specific phone call. This case is unlike *Jones* in that the physical condition of the cell phone did not link it to the crime under investigation, as did the bloodstained phone in *Jones.* We therefore disagree with the Dissent's argument that *Jones* and *McEnany* are indistinguishable from the instant matter. *See* Dissenting Opinion, at 575–76. The distinction between those cases and this one is that the police officers in *Jones* and *McEnany* relied on articulable facts in support of their suspicion that the cell phone contained incriminating evidence, whereas here, the police relied on pure conjecture.

Detective Anthony Perry testified as follows:

It's been my experience that cell phones often have crucial pieces of evidence for our case to assist our case [sic]. I took the phone with the intention of either myself or somebody in our office obtaining a search warrant to get the information or any potential evidence off the phone.

N.T., 4/5/13, at 11–12. Perry testified that he was aware that Appellee and the female victim had a prior romantic relationship, and he suspected that he would find communication between the two shortly prior to the murder. *Id.* at 12–13.

As is evident from the foregoing, Perry did not articulate any specific basis for his suspicion. Appellee and the victim had a romantic relationship at one point, but that relationship was over, and Perry did not explain why the past relationship supported his suspicion that Appellee and the victim had any contact on the day of the murder. Likewise, we believe the learned Dissent's argument relies on conjecture stemming from Appellant's prior relationship with the victim. *See* Dissenting Opinion at 575–76. In *McEnany,* on the other hand, police had specific information that the accused phoned the victim on the day in question. Similarly, in *Ellis,* the police officer offered facts to support his belief that the screwdriver was used in the crime under investigation. Perry offered only generalized speculation in support of his decision to seize Appellee's cell phone. A mere hunch does not justify a seizure. *See Commonwealth v. Holmes,* 609 Pa. 1, 14 A.3d 89, 96–97 n. 16 (2011) (a police officer must rely on articulable facts to justify a seizure); *Commonwealth v. Parker,* 422 Pa.Super. 393, 619 A.2d 735, 739 (1993) ("While the probable cause standard is flexible, mere suspicion is not a substitute for probable cause as grounds for a search and seizure."). Perry's assertion that cell phones often have crucial evidence would support seizure of a cell phone under virtually any circumstance.

Next, we disagree with the Dissent's assertion that the removal of the battery from the cell phone supports a different result in this case. In his affidavit of probable cause to search the cell phone, Detective Kenneth Ruckel stated criminal suspects commonly remove batteries from cell phones in order to avoid GPS detection. Affidavit of Probable Cause, 7/3/12,

at 3.[3] According to the suppression hearing transcript, the battery was removed from Appellant's phone when Perry seized it. N.T., 4/5/13, at 80–83.

▪ In these facts, we discern no basis for a seizure of the phone to search its digital contents. The scope of a search is limited by the basis for its authorization. *See, e.g.,* 619 A.2d at 740 (Pa.Super.1993). The same holds true for searches for digital evidence. For example, this Court in *Commonwealth v. Orie,* 88 A.3d 983 (Pa.Super.2014) held several search warrants to be overbroad where they authorized searches of "any contents" of a flash drive and "all stored communications and other files" of an email account without narrowing the search to files relevant to the alleged criminal activity. *Id.* at 1002–10.[4]

Instantly, the Commonwealth could establish Appellee's evasive conduct simply by introducing testimony that the phone was in pieces and that its physical condition evinced evasive conduct. We do not believe the digital contents of the cell phone are relevant to that point. Said another way, the physical condition of the phone in this case does not justify a conclusion that its contents could be incriminating. As we noted above, the instant facts are quite distinct from those of

*Jones,* where police found a blood-stained cell phone during their search of the defendant's dorm room for evidence of his involvement in a murder. The Dissent's reliance on the July 3, 2012 affidavit of probable cause—which is not at issue in this case—we believe misses the mark.[5]

Finally, the Commonwealth argues that police acted properly in seizing the cell phone in order to ensure that Appellee's mother would not have an opportunity to delete information. Here, the Commonwealth relies on *Commonwealth v. Bostick,* 958 A.2d 543 (Pa.Super.2008), *appeal denied,* 604 Pa. 702, 987 A.2d 158 (2009). *Bostick* is entirely inapposite, inasmuch as the question before the *Bostick* court was whether exigent circumstances justified warrantless entry into a home. *Id.* at 556–57. Exigent circumstances exist where a police officer has probable cause to believe that immediate action is necessary to preserve evidence of a crime. *Id.* at 557. As we have already explained above, police did not have probable cause to believe that Appellee's cell phone contained incriminating evidence. The Commonwealth's exigent circumstances argument lacks merit because the Commonwealth lacked probable cause to seize the cell phone. *See Commonwealth v. Joseph,* 34 A.3d 855, 861

---

**3.** Concededly, the Commonwealth's probable cause—or lack thereof—to search the cell phone's contents is not properly before us. The trial court suppressed the phone based on its conclusion that police unlawfully seized it, and therefore the trial court had no occasion to address the propriety of the subsequent warrant to search the phone's contents.

**4.** The *Orie* Court noted that the law concerning search and seizure of digital information remains under development in Pennsylvania. *Id.* at 1009 n. 43.

**5.** Likewise, we believe the Dissent's reliance on the United States Supreme Court's recent opinion in *Riley v. California,* —— U.S. ——,

134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) is misplaced. The Supreme Court noted, as the Dissent asserts, that cell phones contain "vast quantities of personal information." *Id.* at 2485. The Court did so, however, in support of an 8–1 majority opinion rejecting the government's rationale for a warrantless search of the phone's contents. The initial seizure of the phone was not at issue in *Riley,* and *Riley* therefore has no direct application here. Furthermore, the *Riley* majority relied on the vast quantity of personal information contained in a cell phone to support its opinion protecting an individual from unlawful government intrusion therein. Here, we believe the result urged by the Dissent would violate that protection.

(Pa.Super.2011) (noting that the Commonwealth must demonstrate both probable cause and exigent circumstances to justify a warrantless seizure), *appeal denied,* 619 Pa. 687, 63 A.3d 775 (2013).

We conclude that the trial court did not err in rejecting the arguments properly advanced by the Commonwealth.[6] We therefore affirm the trial court's order.

Order affirmed.

BOWES, J. files a Dissenting Opinion.

DISSENTING OPINION BY BOWES, J.:

I respectfully dissent from the learned majority's decision herein. Appellee Joshua Wright was charged with two counts of homicide, burglary and a violation of the Uniform Firearms Act. He was accused of entering an apartment located at 552 Princeton Boulevard, Wilkinsburg, and killing Michael Lee Black and Dashawna Gibson by shooting each victim in the head while they were sleeping. Ms. Gibson's first cousin, Brandy Clark, leased the apartment. Ms. Gibson was temporarily staying with Ms. Clark because Ms. Gibson was afraid of Appellee, who was the father of Ms. Gibson's baby.

In the early morning hours of July 1, 2012, Ms. Clark fell asleep on the floor of the living room, which was located on the ground level of the two-story residence. At approximately 5:30 a.m., she was awakened by someone moving past her and then she heard a gunshot emanating from the upstairs bedroom where the two vic-tims were located. Ms. Clark next observed Appellee "come down the steps and he stepped over" her while she pretended to be asleep. N.T. Preliminary Hearing, 8/10/12, at 14. Ms. Clark went upstairs, saw that the victims appeared to be dead, and ran back downstairs where she "looked out the front window in the living room" and saw Appellee "get into a white SUV." *Id.* at 16. Ms. Clark was afraid, telephoned her sister, and went to mother's home. She eventually contacted police.

Based upon the information supplied by Ms. Clark, police obtained an arrest warrant for Appellee. After police were informed that Appellee was at his mother's home on 3501 Chateau Lane, Murrysville, Allegheny County Police Detectives Anthony Perry and Kenneth Ruckel, who were accompanied by three Murrysville police officers, executed the arrest warrant at approximately 2:20 a.m. on July 2, 2012. Appellee's mother, Stephanie Pollard, answered the door, gave police consent to enter the home, and led them to Appellee. Appellee awoke when police arrived and was placed under arrest. Since Appellee was in his underwear, police dressed him in pants and a T-shirt and then handcuffed him.

When police were in the process of executing the arrest warrant, they observed a cellular telephone. It was located on a nightstand in the bedroom.[1] The battery was removed from the cell phone and was lying next to it.[2] Police seized the cell

---

6. To be clear, we have decided only that the plain view doctrine and exigent circumstances did not justify the warrantless seizure of Appellee's cell phone. We offer no opinion on whether police could have seized the cell phone on some other basis, or whether the police had any valid means of retrieving data from Appellee's cell phone.

1. While the police indicated that the cell phone was in the pocket of the shorts that they had placed on Appellee, the suppression court credited the testimony of Appellee's mother that it was located on the nightstand.

2. The Commonwealth's evidence that the battery was removed from the cell phone was not contradicted by the defense. To the contrary, Appellee's mother confirmed that the battery

phone and obtained a warrant to search its contents.

The warrant used to search the telephone is contained in the record. It indicates the following:

It is your affiant's experience that cellular telephone information often provides beneficial information that assists with an investigation. Information from the victim and perpetrator's telephone provides the following: persons with whom the perpetrator and victim recently spoke, time lines of the perpetrator and victim, contacts and identities of persons with possible information. Information from the telephone of associates of the perpetrator and victim provides the following: persons with whom the associate spoke with before, during and after the commission of a crime and time lines of both the associate and the associate's contacts and identities of persons with possible information. Your affiant feels this information is extremely crucial and will benefit this investigation. It is also your affiant's experience that people who are fugitives from justice or attempting to evade detection will often turn off their cellular phones or remove their batteries in furtherance to avoid detection.

Affidavit of Probable Cause, 7/3/12, at 2 (emphasis added).

Allegheny County Detective Anthony Perry explained at the suppression hearing why he collected the cell phone at the time of Appellee's arrest: "It's been my experience that cell phones often have crucial pieces of evidence for our case [—] to assist our case." N.T. Suppression Hearing, 4/5/13, at 11. Detective Perry delineated that cell phones contain "call logs, text messages, any contacts, photographs,

videos, anything like that, of which most of those items are very fragile. They could be deleted or otherwise tampered with." *Id.* at 12. When Detective Perry seized the phone in question, he was aware that Ms. Gibson, one of the victims, had a "boyfriend/girlfriend, some type of relationship" with Appellee. *Id.* at 12. Detective Perry believed that the phone might contain evidence of contact between Appellee and the victim before the murder. *Id.* He took the device "with the intention of either myself or somebody in our office obtaining a search warrant to get the information or any potential evidence off the phone." *Id.* at 12–13.

Detective Ruckel confirmed that police were aware that Appellee and Ms. Gibson had a relationship. Ms. Clark had told them that Appellee was the father of Ms. Gibson's child and that "there were several incidents in the past where [Appellee] had been abusive and hit Dashawna Gibson and also threatened Michael Black." *Id.* at 27.

In this case, the suppression court concluded that the police improperly seized the cell phone. It noted that they did not have a search warrant authorizing the seizure of that object and rejected the Commonwealth's position that the cell phone was discovered as part of a search incident to arrest on the basis that the cell phone was not within Appellee's reach when it was taken from the nightstand. Finally, the suppression court dismissed the Commonwealth's invocation of the plain view doctrine, which was raised in a timely motion for reconsideration. The suppression court concluded that the plain view doctrine was inapplicable since the incrimina-

and the cell phone "were separated. They were both laying there on the stand." N.T.

Suppression Hearing, 4/5/11, at 80.

tory nature of the cell phone was not readily apparent.

On appeal, the Commonwealth claims that the plain view doctrine applied when police took the cell phone. The applicable scope and standard of review is as follows:

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings.

*Commonwealth v. Arthur,* 62 A.3d 424, 427 (Pa.Super.2013) (citation omitted).

As we observed in *Commonwealth v. Anderson,* 40 A.3d 1245, 1249 (Pa.Super.2012) (citations omitted),

> the plain view doctrine provides that evidence in plain view of the police can be seized without a warrant.... The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

In this case, the police did not violate the Fourth Amendment during the course of their arrival in the bedroom where they saw the seized object since they had an arrest warrant for Appellee and were granted permission to enter the residence by its owner, who told them Appellee's location. The cell phone was not obscured as it was laying on top of the nightstand. Since police were lawfully in the bedroom, they had the legal right to obtain the item. The issue herein is whether the incriminatory nature of the object was readily apparent to police.

We have observed that when "determining whether the incriminating nature of an object is 'immediately apparent' to a police officer," we evaluate all of the circumstances attendant to the situation. *Commonwealth v. Williams,* 73 A.3d 609, 614 (Pa.Super.2013). The police officer's view that an object is incriminating must be supported by probable cause. *Id.* The probable cause standard in this context "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or **useful as evidence of a crime;** it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required." *Commonwealth v. McEnany,* 446 Pa.Super. 609, 667 A.2d 1143, 1148 (1995) (citations and quotation marks omitted; emphasis in original).

Our Supreme Court discussed the evidentiary value of cell phones in *Commonwealth v. Jones,* 605 Pa. 188, 988 A.2d 649 (2010). Therein, a search warrant was issued for the murder victim's dormitory room to find, *inter alia,* any phones and pagers located therein. When executing the warrant, police saw the victim's cell phone in plain view, and they seized it. We suppressed the phone after concluding that the warrant was not supported by probable cause to believe that evidence of murder would be discovered in the victim's dormitory room since he was murdered blocks away from that location.

The High Court disagreed. It specifically held that evidence of a crime could

logically be discovered in a victim's residence. In so doing, it noted that cellular telephones could contain evidence of a crime since they "could provide leads with regard to any individuals who had spoken with or contacted the victim the night of his murder." *Id.* at 656. The Court also held that the cell phone was properly seized by police under the plain view doctrine.

This Court examined whether a cell phone was incriminatory in nature and subject to seizure under the plain view doctrine in *Commonwealth v. McEnany, supra.* In that case, police took possession of a cell phone that was located in a van. They had obtained a warrant authorizing the search of the vehicle but that document did not delineate that a cell phone was an object subject to seizure. We concluded that the cell phone was validly taken under the plain view doctrine and that its incriminatory nature was readily apparent. We observed that police had been told by one of the perpetrators that he had telephoned the victim's home prior to entering it to rob her.

Applying the logic contained in those two decisions, it is evident herein that police had probable cause to believe that the Appellee's cell phone could be useful as evidence of a crime. In a practical sense, it is probable that the cell phone would contain useful information. Even though they did not have specific information that Appellee telephoned either victim on the night of the murder, as did the police in *McEnany,* the police in this case had other facts at their disposal when they removed the cell phone from the house that gave them probable cause to believe it might be useful as evidence in this case.

Police were aware of the following when they took the phone. First, Appellee and Ms. Gibson had previously been involved in an intimate relationship that produced a child. The majority, in its analysis, overlooks that Detective Kenneth Ruckel testified that he was aware that Appellee was the father of Ms. Gibson's child. N.T. Suppression Hearing, 4/5/13, at 27. While I would agree that former lovers do not necessarily stay in touch with each other, people with a child have frequent contact with each other regarding the well-being as well as custody arrangements for the child. They were joint parents and had that extant relationship when the murder occurred. Thus, in my view, the record supports that the cell phone would likely reveal contact between the victim and the murderer. Moreover, Appellee had been abusive toward Ms. Gibson and had threatened the other victim, which also supported the reasonable supposition that he remained in contact with the victims.

These facts all justify the belief of the police that the cell phone might contain a record of Appellee contacting the victims prior to the murder. Additionally, calls made by Appellee during the timeframe pertinent to the murder investigation could reveal his location during those calls and provide evidence that he was in the vicinity of the crime scene.

Also notable is the fact that the battery was removed from the cell phone. As the search warrant indicates, batteries are removed by perpetrators of crimes to avoid detection by police. Thus, the battery's removal from the cell phone gave police more reason to suspect that Appellee was involved in the murders and that he was using his cell phone during the relevant period that police were investigating.

The record herein also includes the search warrant and its affidavit outlining the fact that people fleeing from police will remove batteries from their cell phones so police cannot locate them. The warrant with affidavit was admitted into evidence at the suppression hearing, N.T. Suppres-

sion, 4/5/13, at 35, and its contents were not contradicted by any defense evidence. Furthermore, the Commonwealth's evidence that the battery was removed from Appellee's cell phone was not only uncontradicted, it was confirmed by Appellee's mother.

The majority concludes that the Commonwealth waived the right to rely upon the fact that battery removal is evidence that the owner of the cell phone wanted to avoid detection by police. An appellant cannot waive facts. Issues are waived, not record evidence. The **legal issue** is whether police articulated a basis for concluding that the cell phone might have contained useful evidence. The **fact** that the cell phone was disassembled supports the legal argument that the cell phone may have contained evidence useful to this murder prosecution. In my view, on appeal, the Commonwealth is perfectly entitled to rely upon this fact of record to maintain that the incriminatory nature of the cell phone was readily apparent to the two officers in question.

The holdings of *Jones, supra,* and *McEnany, supra,* simply cannot logically be distinguished herein. *Jones* held that a cell phone's record of telephone calls made by the victim of a murder, standing alone, renders the cell phone incriminatory in nature. Conversely, a cell phone's record of telephone calls made by the suspected perpetrator of the crime renders that device incriminatory in nature. In this case, as in *McEnany*, there were other specific facts that were within the police's knowledge bolstering the police's belief that the phone was incriminatory in nature. Ms. Gibson and Appellee had an ongoing relationship due to their child, and Appellee was in contact with both Ms. Gibson and Mr. Black.

The evidentiary value of cell phones cannot be overstated. As Detective Perry delineated, cell phones "often have crucial pieces of evidence" that assist in solving crimes. N.T. Suppression Hearing, 4/5/13, at 11. Data in a cell phone that can aid police include "call logs, text messages, any contacts, photographs, [and] videos." *Id.* at 12. In my view, the incriminatory nature of a murder suspect's cell phone located in the room where he was arrested with its battery removed when he had been in ongoing contact with the victims is readily apparent.

As noted by the United States Supreme Court, "Cell phones . . . place vast quantities of personal information literally in the hands of individuals." *Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2485, 189 L.Ed.2d 430 (2014). The Court further observed that, "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.* at 2489. The Court observed that even a basic, inexpensive cell phone "might hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on." *Id.; see also id.* at 2488–89 ("Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."); *id.* at 2490 ("more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate"). It also noted that cell phone data can reveal a person's location at any given time.

Indeed, the holding in *Riley* is premised upon the explicit acknowledgement that cell phones contain such a vast amount of

personal data that the phone would **undoubtedly** contain evidence that is incriminatory in nature. *Id.* at 1292 ("In the cell phone context ... it is reasonable to expect that incriminating information will be found on a phone regardless of when the crime occurred."); *id.* at 2493 ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals."). It is precisely due to the fact that so much personal information is contained in a cell phone that police must obtain a warrant before exploring its contents. *Id.*

In this case, police obtained such a search warrant. Appellee's mother easily could have destroyed the phone if it had been left behind. As the police actions in this case were above reproach, I would reverse the suppression order herein, and therefore respectfully dissent.